## The ALLEN COMPANY, INC., Petitioner,

v.

## The INDUSTRIAL COMMISSION OF the STATE of COLORADO and Carol Mantle, Respondents.

## The INDUSTRIAL COMMISSION OF the STATE of COLORADO, Petitioner,

v.

## THREADWORKS, INC., and Down Sports and Jackie Sierminski, Respondents.

Nos. 87SC33, 87SC28.

Supreme Court of Colorado,
En Banc.

Oct. 17, 1988.

Daniel J. Collyar, Denver, for petitioner Allen Co., Inc.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, First Asst. Atty. Gen., Denver, for respondent Indus. Com'n.

No appearance for respondent Carol Mantle.

Philip Hornbein, Jr., Denver, for amicus curiae Colorado Bldg. & Const. Trade Council.

Lirtzman, Nehls & Meyrich, Joan M. Norman, Edward J. Roche, Jr., Boulder, for respondents Threadworks, Inc., Down Sports and Jackie Siermenski.

ERICKSON, Justice.

We granted certiorari and consolidated *Allen Co., Inc. v. Industrial Commission,* 735 P.2d 889 (Colo.App.1986), and *Threadworks, Inc. v. Industrial Commission,* 735 P.2d 886 (Colo.App.1986), to reconcile conflicts in the two decisions of the court of appeals. The issue before both panels of the court of appeals was whether the Industrial Commission (Commission) properly ruled that home sewers who provided services to sporting-good manufacturers are employees covered by the Colorado Employment Security Act (Act). We hold that there was substantial evidence in both cases supporting the Commission's findings that the home sewers were employees and that both Allen Company, Inc. (Allen) and Threadworks, Inc. (Threadworks) were obligated to pay unemployment insurance taxes on behalf of the home sewers. Accordingly, we affirm the court of appeals in

*Allen,* and reverse and remand with directions in *Threadworks.*

## I.

The Commission summarized the facts in the finding of fact and order that was entered in both *Threadworks* and *Allen.* Threadworks manufactures various articles such as camera bags, backpacks, and clothing. Workers such as Jackie Sierminski perform services for Threadworks as home sewers by sewing material as part of this manufacturing process. The home sewers use their own equipment in performing these services, but Threadworks provides all material, including hardware and thread, and specifies how the material is to be assembled. The home sewers' completed work-product must meet specific quality standards that are established by Threadworks. The home sewers do not perform their work on Threadworks' premises, primarily because of Threadworks' limited space. The home sewers are paid by Threadworks on a piecework basis at a rate that is generally established by Threadworks, although the rate may be subject to negotiation. These services are generally performed pursuant to a written agreement, but the working relationship may be terminated at will by either Threadworks or the worker.

Allen manufactures sporting-good articles such as archery gloves and gun cases. The home sewers, including Carol Mantle, perform services for Allen by sewing the materials provided by Allen into a final product. The home sewers use their own equipment in performing these services, but Allen provides pre-cut material and thread to the workers. Allen also provides a sample or model to the workers, and the worker's completed product must meet the specific quality standards established by Allen. The home sewers are paid by Allen on a piecework basis at a rate that is generally established by Allen, although the rate may be subject to some negotiation. The working relationship may be terminated by the home sewer at will without incurring liability. Allen is also entitled to dismiss any home sewer without incurring liability. The home sewers do not deliver or sell their products directly to the retail companies, but rather deliver the product to Allen who then effects the sale.

## II.

The Colorado Employment Security Act, sections 8–70–101 to 8–82–105, 3B C.R.S. (1986 & 1987 Supp.), is a comprehensive legislative scheme for providing unemployment compensation benefits to individuals who qualify. The funding for this program comes from unemployment insurance taxes levied against employers. § 8–76–101, 3B C.R.S. (1986). Companies whose work is performed by employees are subject to the Act's provisions and must pay into the fund via unemployment insurance taxes, while companies that contract out their work to independent contractors are not covered by the Act and hence are not required to pay the taxes.

Section 8–70–103(10)(a)(I) and (III), 3B C.R.S. (1986) of the Act provides the following guidelines for determining whether the work performed by an individual for the benefit of another is "covered employment" pursuant to the Act:

(10)(a) ... Notwithstanding any other provision of this subsection (10), service performed by an individual for another shall be deemed to be employment, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the division that:

(I) Such individual is free from control and direction in the performance of the service, both under his contract for the performance of service and in fact; and

. . . .

(III) Such individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed.

The plain language of section 8–70–103(10)(a) creates a presumption that an individual who performs services for another is engaged in employment covered by the Act. This presumption can be rebutted if the rebutting party can establish, to the Commission's satisfaction, both subsections

(I) and (III) of section 8–70–103(10)(a). Whether the party has met this burden is a factual determination to be made by the Commission. *See Wagner & Sons Constr., Inc. v. Pagels,* 720 P.2d 987 (Colo.App. 1986); *Weld County Kirby Co. v. Industrial Comm'n,* 676 P.2d 1253 (Colo.App. 1983). The Commission's decision should not be disturbed if it is supported by substantial evidence. *Diamond Circle Corp. v. Blocher,* 691 P.2d 769 (Colo.App.1984). Substantial evidence is that which is probative, credible, and competent. It is evidence that is of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradicting testimony or contradictory inferences. *See Coakley v. Hayes,* 121 Colo. 303, 215 P.2d 901 (1950); *A. Carbone & Co. v. MacGregor,* 113 Colo. 241, 155 P.2d 994 (1945).

### III.

In *Allen,* the Commission found that the home sewers were engaged in "covered employment" under the Act. The Commission made these factual findings in reaching its conclusion:

> The home sewers are paid a piecework rate that is generally established by the employer to perform specified services on material that is provided by the employer, subject to quality standards established by the employer. Further, the worker or employer may terminate the working relationship at will without incurring liability.

The Commission further concluded that Allen failed to establish that the home sewers were customarily engaged in an independent trade, occupation, profession, or business as required by section 8–70–103(10)(a)(III).

The court of appeals in *Allen* upheld the Commission's findings of fact and order because there was substantial evidence to support the Commission's determination. *Allen,* 735 P.2d at 891. In *Threadworks,* the Commission's findings of fact were nearly identical to those made in *Allen.* In *Threadworks,* the findings were:

> The home sewers are paid a piecework rate that is generally established by the employer to perform specified services on material that is provided by the employer, subject to quality standards established by the employer. Further, this working relationship may be terminated at will by the employer.

In *Threadworks,* the court of appeals held that the Commission's conclusion that the home sewers were under the control and direction of Threadworks was not supported by substantial evidence. The court of appeals also found Threadworks had established that the home sewers were customarily engaged in the business of providing home sewing to companies other than Threadworks. Because Threadworks was held to have met its burden under section 8–70–103(10)(a)(I) and (III), the court of appeals remanded the cause for entry of an order that Threadworks was not obligated to pay the unemployment insurance taxes.

### IV.

In reviewing the court of appeals decisions in *Allen* and *Threadworks,* we need only determine whether the Commission's findings were supported by substantial evidence. *Diamond Circle Corp.,* 691 P.2d at 769. The term "control and direction" referred to in section 8–70–103(10)(a)(I) is a general right to control. In *Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 Colo. 550, 88 P.2d 560 (1939), we said:

> The first condition in the statutory test relates to freedom of control and direction over the performance of services, both under contract and in fact. Does the company control and direct performance of services, or will it have the right to do so under the contract, if it desires to do so? We are not here concerned with details but with general control.
>
> . . . .
>
> The question of control and direction ... is not a matter of degree. Undoubtedly, it relates to general control. It is not satisfied by some "detail" in which the individual may be free to exercise his own judgment. The power to terminate

a contract for personal service at any time without liability is an important factor in arriving at a conclusion as to whether the individual is free of control and direction "because the right immediately to discharge involves the right of control."

Id. at 556–58, 88 P.2d at 563–64 (quoting *Industrial Comm'n v. Bonfils,* 78 Colo. at 306–08, 241 P. at 735–36).

■ We find substantial evidence to support the Commission's finding that both Allen and Threadworks exercised control over the home sewers. Both companies had the power to terminate the sewers at any time without incurring liability, which is a strong indication of control. *Northwestern,* 103 Colo. 550, 88 P.2d 560; *Industrial Comm'n v. Bonfils,* 78 Colo. 306, 241 P. 735 (1925); *Industrial Comm'n v. Hammond,* 77 Colo. 414, 236 P. 1006 (1925). Additionally, the fact that the home sewers were required to use only those materials supplied by the company to perform the work evidences control. *See Northwestern,* 103 Colo. at 558, 88 P.2d at 564. The setting of quality control standards by Allen and Threadworks is also a factor tending to establish control. *See id.,* at 559, 88 P.2d at 564.

Since substantial evidence supported the Commission's orders in *Allen* and *Threadworks,* we affirm the court of appeals decision in *Allen* and reverse in *Threadworks* and remand to the court of appeals with directions to affirm the Industrial Commission.

KIRSHBAUM, J., does not participate.