Arthur L. BARGE, Jr., d/b/a
TBT Agency, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO
and The Division of Employment and
Training, Respondents.

No. 94CA1884.

Colorado Court of Appeals,
Div. V.

Sept. 28, 1995.

Tremaroli & Tremaroli, P.C., Christopher B. Tremaroli, Cynthia L. Tremaroli, Colorado Springs, for Petitioner.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Kathleen Butler Denman, Assistant Attorney General, Denver, for Respondents.

Opinion by Judge ROY.

Arthur L. Barge, Jr., d/b/a TBT Agency, seeks review of a final order of the Industrial Claim Appeals Panel which determined that the performance of services by Guy W. Dufort and other similarly-situated musicians constituted "employment" for unemployment compensation tax liability purposes and held him liable for payment. We affirm.

Barge is a vocalist and trumpet player. He performs with and leads a band organized in 1987 known as the "Big Chill," consisting of seven to twelve musicians depending on the engagement. The band plays at dances, weddings, and other special events, and is occasionally engaged to perform at hotels, nightclubs, and other establishments.

Barge acts as agent and "books" the band through TBT Agency. The client has primary control over the size of the band, the time and place of the performance, and the type of music to be performed. The client pays TBT Agency which, in turn, pays the musicians and Barge.

Barge selects the band members from a pool of musicians residing, with rare exception, in or near Colorado Springs. In 1991, Barge engaged, apparently at different times, the services of nine different musicians; in 1990, twelve; in 1989, twelve; in 1988, eighteen; and in 1987, twelve. There is a schedule as to what each musician is to be paid depending on the engagement, and each musician is responsible for his own transportation, lodging, clothing, and meal expenses if any are incurred. Each musician provides his own instrument which, in some instances, amounts to a substantial investment.

While the band is constituted from a pool of musicians, there is a "core" of musicians, of which Dufort and similarly-situated musicians are typical, who play at almost all engagements and who earn all, or substantially all, of their earned income as performers with the band. No musicians are required to play all of the engagements and each is free to refuse any engagement. Each of the musicians who testified, including Dufort, stated that they regularly advertised themselves as musicians through regular but limited and informal channels, and each accepted employment from others which they would honor in the event of a conflict with the band if first in time.

The contracting and scheduling of the band was done exclusively by Barge, though one musician stated he could schedule the band. The testimony was that most decisions relating to repertoire, style, and personnel were made collegially by the members of the band but that Barge, as leader, was the greater among equals. Though no irreconcilable disagreements had arisen, the musicians who testified, in response to questions positing hypothetical disagreements, indicated that they would, ultimately, defer to Barge if a consensus was not forthcoming.

Prior to joining the band, each musician executes a "memorandum of understanding" which identifies "Barge" as the leader of the band and requires the musician to "attend rehearsals and to practice the musical arrangements and choreography selected by the band leader," and to "conform his play to the sound and style standards of the band so as to assure the professional quality of the music performed by the band."

## I.

Barge contends that there was sufficient evidence introduced at the hearing to establish that Dufort and other similarly-situated musicians were independent contractors pursuant to § 8–70–115(1)(b), C.R.S. (1994 Cum. Supp.). We reject this contention.

■ Section 8–70–115(1)(b) provides that services performed by an individual for another are deemed to be employment for purposes of the Colorado Employment Security Act, § 8–70–101, et seq., C.R.S. (1986 Repl. Vol. 3B), unless the putative employer shows that the individual is free from the control and direction in the performance of the service, by contract and in fact, and is customarily engaged in an independent trade, occupation, profession, or business related to the service. The putative employer has the burden of proving both conditions exist in order to rebut the presumption of an employment relationship. *See Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office,* 859 P.2d 278 (Colo.App.1993).

■ To be customarily engaged in an independent business, a worker must actually and customarily provide similar services to others at the same time he works for the putative employer. *See Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office, supra* (carpet installers who earned substantial income from, or through, others by installing carpet were not employees for unemployment tax purposes); *Locke v. Longacre,* 772 P.2d 685 (Colo.App.1989) (a licensed practical nurse retained to care for the putative employer's mother twenty-four hours a day was an employee even though the nurse performed some services for others); *see also National Claims Associates, Inc. v. Division of Employment,* 786 P.2d 495 (Colo.App.1989) (claims adjusters and vocational rehabilitation counselors were not free from the control and direction of their alleged employer where employer set compensation structure, billed for services provided, and provided office space, furniture, equipment, clerical support, and standardized forms).

■ The purpose of this requirement is to protect the security of workers who receive substantially all of their earnings from one employer. Accordingly, performance of occasional or insubstantial services for others does not establish that a worker is "customarily" engaged in an independent trade, occupation, or business.

■ Here, the hearing officer found that, although Dufort and other similarly-situated musicians were free to play other musical engagements, the musicians worked mainly out of their homes, did not maintain business addresses or telephone numbers, and earned from 95 to 99 percent of their income as musicians with this band. Based on these findings, the hearing officer concluded that Dufort and other similarly-situated musicians were not customarily engaged in independent trades, occupations, professions, or businesses related to the services they performed with the band.

These findings are supported by substantial evidence and may not be disturbed. *See Allen Co., Inc. v. Industrial Commission,* 762 P.2d 677 (Colo.1988). Further, because the findings support the conclusion, we affirm it. Section 8–74–107, C.R.S. (1986 Repl. Vol. 3B).

As Barge failed to prove that Dufort and other similarly-situated musicians were customarily engaged in independent businesses, we need not consider whether Barge proved that the musicians were free from direction and control.

## II.

Barge further contends that the Panel erred in failing to conclude that the "memorandum of understanding" signed by the musicians was sufficient to create a rebuttable presumption that the musicians were independent contractors and in failing to implement the presumption. We need not address this issue.

As previously stated, § 8–70–115(1)(b) provides that services performed by an individual for another are deemed to be employment for purposes of the Colorado Employment Security Act, § 8–70–101, unless the putative employer shows that the individual is free from the control and direction in the perfor-

mance of the service, by contract and in fact, and is customarily engaged in an independent trade, occupation, profession, or business related to the service.

Section 8–70–115(1)(c), C.R.S. (1994 Cum. Supp.) allows a putative employer to prove that an individual is an independent contractor as defined by the statute either by presenting general evidence demonstrating the two criteria described above *or* by means of a written document which satisfies the requirements set forth in § 8–70–115(1)(c). If the written document satisfies the statutory requirements, it establishes a rebuttable presumption that an independent contractor relationship as defined by the statute exists between the parties. Section 8–70–115(2), C.R.S. (1994 Cum.Supp.). In this instance, Barge attempted both methods of proof.

■ The Panel determined that the "memorandum of understanding" executed by Barge and each musician contained the advisements required by statute but failed to contain all of the required terms and that, therefore, it failed to raise any presumption. We conclude that, even if the "memorandum of understanding" satisfied the statute and raised the desired presumption, the Panel could properly conclude that the presumption was rebutted by the evidence indicating that Dufort and other similarly-situated musicians were not customarily engaged in an independent trade, occupation, profession, or business related to the service performed. *See Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office, supra.*

The Panel's order is affirmed.

RULAND and SMITH *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. (1995 Cum.Supp.).