HOME HEALTH CARE
PROFESSIONALS,
Petitioner,

v.

COLORADO DEPARTMENT OF LABOR & EMPLOYMENT, DIVISION OF EMPLOYMENT; and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

Nos. 95CA2014 to 95CA2016.

Colorado Court of Appeals,
Div. I.

Aug. 22, 1996.

Rehearing Denied Sept. 26, 1996.

Certiorari Denied May 19, 1997.

Thomas N. Scheffel & Associates, P.C., Bradley S. Abramson, Denver, for Petitioner.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John D. Baird, Assistant Attorney General, Denver, for Respondents.

Opinion by Judge CRISWELL.

In this consolidated appeal, Petitioner, Home Health Care Professionals, Inc. (HHCP), seeks review of three final orders of the Industrial Claim Appeals Office (Panel) which held HHCP liable to pay unemployment compensation taxes as the employer of certain physical therapists, home health aides, and registered nurses. We affirm.

HHCP provides home health care to patients by receiving requests for health care services and by referring appropriate health care providers to the patients. It also bills for the services rendered by the health care providers, primarily under Medicare and other insurance programs.

HHCP provides such services by contracting with four classes of health care providers: registered nurses, physical therapists, occupational therapists, and home health aides. However, the form of the contract is the same for each class.

The Division of Labor & Employment (Division) contended that the physical therapists, home health aides, and registered nurses were engaged in covered employment for purposes of the Colorado Employment Security Act (Act), § 8–70–101, et seq., C.R.S. (1986 Repl.Vol. 3B). It designated several representative workers for each class and sought a determination that all of the representative workers, as well as all other workers in each class who were similarly situated, were so employed, to the end that HHCP owed unemployment compensation taxes for all such workers.

After a separate, evidentiary hearing before a hearing officer with respect to each class of workers, the hearing officer determined that HHCP had failed to prove that any of the representative workers in each class were free from its control or that any of them were customarily engaged in an independent related business. Hence, it was concluded that all of the representative workers in each class, as well as all other workers similarly situated, were in covered employment.

On its review of this decision, the Panel concluded that the evidence supported the determination that only one representative worker in each class was in covered employment and that the other representative workers were not. Hence, it affirmed the hearing officer's determination with respect to one representative worker in each class (and with respect to any worker similarly situated to that one representative worker), but reversed the hearing officer's determination with respect to all other workers. It is these orders of the Panel that HHCP seeks to have reviewed.

In asking to have these orders set aside, HHCP does not assert that the factual findings made by the hearing officer and adopted

by the Panel are not supported by the evidence. Rather, HHCP argues that, in light of §§ 8–70–115(1)(c) and 8–70–115(2), C.R.S. (1995 Cum.Supp.), such evidence was legally insufficient to overcome the rebuttable presumption that the pertinent workers were not in covered employment. We disagree.

Since its original adoption in 1936, the Act has contained a provision deeming the services rendered by any worker to an employer to be covered employment for purposes of unemployment compensation benefits, unless at least two conditions are shown to exist. *See* Colo. Sess. Laws 1936, 3rd Ex.Sess., Ch. 2 § 19(g)(3) at 53.

The pertinent part of that provision, § 8–70–115(1)(b), C.R.S. (1995 Cum.Supp.), now reads as follows: .

*Notwithstanding any other provision of this subsection (1)* ... service performed by an individual for another *shall be deemed* employment, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the division that such individual is free from control and direction in the performance of the service, both under his contract for the performance of the service and in fact; and such individual is *customarily engaged* in an independent trade, occupation, profession, or business related to the service performed. (emphasis supplied)

Over the years, this statute has been interpreted to mean that, even though a worker may be sufficiently free from the control and direction of the putative employer so as to be classed as an "independent contractor" under the common law, nevertheless, that worker may still be entitled to receive unemployment benefits. Opinions from this court have uniformly determined that the requirement that the worker be "customarily engaged" in an independent trade or business is designed to assure that a worker, whose income is almost wholly dependent upon continued employment by a single employer, is protected from the vagaries of involuntary unemployment, irrespective of the worker's status as a "servant" or as an "independent contractor" under the common law. *Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office,* 859 P.2d 278 (Colo. App.1993); *Allstate Products Co. v. Colorado Department of Labor & Employment,* 782 P.2d 880 (Colo.App.1989); *Locke v. Longacre,* 772 P.2d 685 (Colo.App.1989); *Weitzel Redi-Mix, Inc. v. Industrial Commission,* 728 P.2d 364 (Colo.App.1986); *Auto Damage Appraisers, Inc. v. Industrial Commission,* 666 P.2d 1113 (Colo.App.1983).

■ Further, § 8–70–115(1)(b) places the burden of proof upon the putative employer to demonstrate that both conditions described in that sub-section exist. *See Jackson Cartage, Inc. v. Van Noy,* 738 P.2d 47 (Colo.App.1987).

■ The Act was amended in 1990 (Colo. Sess. Laws 1990, ch. 296 at 1766–1768) and in 1991 (Colo. Sess. Laws 1991, ch. 229 at 1366–1368) to add what are now §§ 8–70–115(1)(c) and (d), C.R.S. (1995 Cum.Supp.) and 8–70–115(2), C.R.S. (1995 Cum.Supp.). In pertinent part, § 8–70–115(1)(c) provides that:

(c) *To evidence* that such individual .is engaged in an independent trade, occupation, profession, or business ... the individual and the person for whom services are performed may either show by a preponderance of the evidence that the conditions set forth in [§ 8–70–115(1)(b) ] have been satisfied, or they may demonstrate in a written document, signed by ̇both parties, that the person for whom services are performed does not:

(I) *Require* the individual to work exclusively for the person for whom the services are performed; except that the individual may choose to work exclusively for the said person for a finite period of time specified in the document .... (emphasis supplied)

Section 8–70–115(2) says that:

(2) [If such a document is used, it] shall create *a rebuttable presumption of an independent contractor relationship* between the parties, where such document contains a disclosure, in type which is larger than the other provisions in the document or in boldface or underlined type [that the worker is not entitled to unemployment compensation coverage]. (emphasis supplied)

Here, it is undisputed that the contract executed by HHCP and each worker meets the requirements of § 8–70–115(1)(c). Further, the Division has not appealed from the Panel's determination that there was no evidence presented that rebutted the statutory presumption that each of the three representative workers was "free from control and direction in the performance of the service," within the meaning of the first condition described in § 8–70–115(1)(b).

In contrast, HHCP acknowledges that the record here contains evidentiary support for the hearing officer's finding, approved by the Panel, that none of the three workers is, in fact, "customarily engaged in an independent trade, occupation, profession, or business," the second condition described in § 8–70–115(1)(b). However, it argues that such evidence is legally insufficient to rebut the presumption with respect to this subject created by the execution of a document meeting the requirements of § 8–70–115(1)(c). More specifically, HHCP argues that, under §§ 8–70–115(1)(c) and 8–70–115(2), if the written document contains provisions showing that the putative employer does not *require* the worker to perform services exclusively for that employer, the statutory presumption can be rebutted only by evidence showing that such statement is inaccurate and that the employer does, in fact, require the worker to render services exclusively for that employer.

This argument is necessarily premised upon the proposition that the 1990 and 1991 amendments had the effect of amending the *substantive* provisions of § 8–70–115(1)(b), so that, if an employer executes a § 8–70–115(1)(c) document and does not require the worker to provide services exclusively for that employer, the worker will not be entitled to the protection of the Act, even if he or she does not, in fact, customarily engage in an independent trade, occupation, profession, or business. We conclude, however, that the plain language of the statute will not admit of such a construction.

First, § 8–70–115(1)(b), by its own terms, i.e., ["n]otwithstanding any other provision of this sub-section (1)," is declared to be the governing provision. And, it is undisputed that its provisions require proof by the puta-

tive employer that the worker is, in fact, customarily engaged in work for others in order to avoid coverage under the Act.

Significantly, even though it is presumed that the General Assembly was aware of the construction previously placed upon § 8–70–115(1)(b) by the courts, *see Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049 (Colo. 1995), it made no amendment to this statute in either 1990 or 1991, when it added §§ 8–70–115(1)(c) and (d) and 8–70–115(2). We must presume, therefore, that the General Assembly intended no change in its requirement. *Kern v. Gebhardt*, 746 P.2d 1340 (Colo.1987).

Likewise, the 1990 and 1991 amendments make clear that their purpose was not to effect any change in the substantive requirements of § 8–70–115(1)(b). Rather, recognizing that it is the employer's burden to establish the existence of each of the required conditions, the General Assembly enacted § 8–70–115(1)(c) to provide a simplified procedure pursuant to which the employer may meet this initial burden. Hence, that statute says that the written document is "to *evidence*" (*not* "to establish") that the worker is engaged in an independent trade or business. Further, § 8–70–115(2) provides that such an agreement merely creates a "rebuttable presumption" that the worker is not covered by the Act.

We conclude, therefore, that, under the plain language of the amendments, the ultimate factual issues remain the same, i.e., whether, in fact, the worker is free from the direction and control of the employer and whether, in fact, the worker is customarily engaged in an independent trade, occupation, profession, or business.

■ If the written agreement demonstrates that the employer does not require the worker to work exclusively for that employer, it is not unreasonable to infer, as § 8–70–115(2) requires, that the worker does maintain an independent business. *See Rent–A–Mom, Inc. v. Industrial Commission*, 727 P.2d 403 (Colo.App.1986) (fact that worker earned only $600 in one year from employer is prima facie evidence that worker

was engaged in an independent trade or business).

However, if other evidence in the record is, as here, sufficient to demonstrate that this inference or rebuttable presumption is not accurate and that the worker, in fact, does not engage in such an independent enterprise, a finding to that effect must result in a determination that the worker is covered by the Act. *See Barge v. Industrial Claim Appeals Office*, 905 P.2d 25 (Colo.App.1995).

To sustain its construction of the present statute, HHCP seeks to rely upon certain statements made at the time of the adoption of the 1990 amendment. However, because we have determined that the language of the statue is clear and unambiguous on its face, resort to legislative history is both unnecessary and inappropriate. *See PDM Molding, Inc. v. Stanberg*, 898 P.2d 542 (Colo.1995).

Order affirmed.

METZGER and ERICKSON *, JJ., concur.